## Mantia v. Northern Insurance Co. of New York

C.P. of Lancaster County, no. 3849-1992.

*William E. Haggerty* and *Joseph F. Roda,* for plaintiff.
*Bruce R. Morrison,* for defendants.

STENGEL, *J.,* April 27, 1998—The court has been asked to determine the proper statute of limitations to apply to an action for bad faith. The cause of action asserted by Mr. Mantia against defendants is based on 42 Pa.C.S. §8371, which provides:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

The bad faith statute itself does not provide a statute of limitations. As of this writing, no state court in Pennsylvania has addressed the issue of the applicable statute of limitations.

Defendants contend that an action for bad faith under section 8371 sounds in tort and, thus, would be subject to a two-year statute of limitations under 42 Pa.C.S. §5524(7).[1] Plaintiff argues that 42 Pa.C.S. §5527 applies to an action under §8371 and that the applicable period of limitations for such an action is six years.[2]

There are, however, three cases from the United States District Court for the Eastern District of Pennsylvania which have addressed this very issue. In *Nelson v. State Farm Mutual Automobile Insurance Co.*, C.A. no. 97-4653 (E.D. Pa. December 12, 1997), the federal court predicted that the Supreme Court of Pennsylvania would conclude that an action under section 8371 sounds in

---

1. 42 Pa.C.S. §5524(7) provides for a two-year statute of limitations for actions involving: "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter."

2. 42 Pa.C.S. §5527 provides in pertinent part:

"Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years."

tort, and thus would be subject to a two-year statute of limitations under section 5524(7). Contrary to this position, two other judges have predicted that the Supreme Court would find that "an action under [section] 8371 is so steeped in both contract and tort law that the six-year statute of limitations should apply." *Nelson,* slip op. at 6, citing *Woody v. State Farm Fire and Casualty Co.,* 965 F. Supp. 691 (E.D. Pa. 1997), and *Miller v. The Cincinnati Insurance Co.,* C.A. no. 97-1223 (E.D. Pa. July 9, 1997).

Defendants contend that section 8371 established a "new tort" to provide a remedy for insureds whose benefits are denied without good reason or explanation. Defendants' position very closely mirrors the view advanced in *Nelson, supra. Nelson* cites essentially three reasons in support of using the two-year limitation period. Considered individually or cumulatively, these reasons do not convince me that an action under section 8371 sounds exclusively in tort.

The first reason given in *Nelson* is that "the history of 'bad faith' " as a cause of action in Pennsylvania makes recognition of a "new tort" consistent and expected. In terms of Pennsylvania decisional law, *Nelson* primarily relies on *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981),[3] for the conclusion that first-party

---

3. In *D'Ambrosio,* the plaintiff/insured, Anthony D'Ambrosio, filed a two-count complaint, one in assumpsit and the second in trespass. In the assumpsit count, the insured averred that his motor boat, which was covered by the defendant insurance company, was damaged in a storm. The plaintiff claimed the insurer breached the insurance contract by not honoring the claim relating to the damages to the plaintiff's boat. In the plaintiff's count in trespass, the plaintiff alleged that the insurer "summarily denied" the plaintiff's claim for the damages to his boat, stating only that the claim was "improper." In addition,

bad faith must be viewed as a tort. Actually, the court in *D'Ambrosio* held exactly the opposite. The Supreme Court held that the plaintiff could not bring an action in tort against the insurer because the facts alleged did not state a cause of action in tort. *D'Ambrosio,* 494 Pa. at 510, 431 A.2d at 971.

While the Pennsylvania Supreme Court recognized that California had been the first state to create this "new tort" in *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) (en banc), the court declined to follow California's lead in creating a new common-law cause of action for bad faith. Noting that California courts have been criticized for creating this "new tort," the *D'Ambrosio* court went on to quote one critic of the *Gruenberg* decision:

"The California courts have created this 'new tort' in an obvious attempt to afford more protection to insureds. However, it has not really been established that there is a need of this additional protection. . . . State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis. Likewise, state legislatures are capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations." *D'Ambrosio,* 494 Pa. at 507-508, 431 A.2d at 970, quoting Kircher, *Insurer's Mistaken Judgment—A New Tort?,* 59 Marq.L.Rev. 775, 786

---

the insurer allegedly refused to disclose to the insured what facts or information it relied upon for its denial of coverage. Based on this alleged "bad faith" conduct, the plaintiff sought punitive damages and damages for emotional distress, in addition to compensatory damages for the property damage claim. *Id.* at 502, 431 A.2d at 967. The trial court dismissed the insured's claim for bad faith on the insurer's demurrer, and a divided Superior Court affirmed.

(1976). In an expression of agreement with this comment, the Supreme Court held:

"Surely it is for the legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the legislature to determine whether sanctions beyond those created under the [Unfair Insurance Practices] Act [40 P.S. §1171 et seq.] are required to deter conduct which is less than scrupulous." *D'Ambrosio,* 494 Pa. at 508, 431 A.2d at 970.

*Nelson* notes that, while rejecting the creation of a new common-law cause of action for bad faith, the Pennsylvania Supreme Court in *D'Ambrosio* referenced three other state Supreme Court cases which recognized a common-law cause of action for bad faith sounding in tort: *Bibeault v. Hanover Insurance Co.,* 417 A.2d 313 (R.I. 1980); *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978), and *Gruenberg, supra.* The Supreme Court cited *Gruenberg* because "[i]n arguing for the reinstatement of his count in trespass, appellant [D'Ambrosio] would have this court adopt the position of the Supreme Court of California which, in *Gruenberg,*" held that "bad faith" conduct may give rise to a cause of action in tort. *D'Ambrosio,* 494 Pa. at 505, 431 A.2d at 968.

Moreover, the *D'Ambrosio* court noted that, in asking the court to recognize a new cause of action in tort for bad faith conduct, the plaintiff provided no factual support for the suggested cause of action and referred to *Bibeault, supra,* and *Anderson, supra,* in this way:

"[E]ven those jurisdictions which have recognized a cause of action for bad faith conduct have cautioned that '[i]f the claim is "fairly debatable," no liability in tort will arise,' *Bibeault [supra]* and that 'a plaintiff must show the absence of a reasonable basis for denying

benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.' *Anderson [supra]." D'Ambrosio,* 494 Pa. at 510, 431 A.2d at 970.

These references by the Pennsylvania Supreme Court to *Gruenberg, Bibeault* and *Anderson* do not imply support for the creation of a "new tort" of first-party bad faith. If anything, the citations to these other courts demonstrate a lack of support for the creation of such a "new tort."

Further, the comment by Christopher Hasson, *The 1990 Pennsylvania Auto Insurance Law: An Analysis of "Bad Faith" and the "Limited Tort Option,"* 29 Duq.L.Rev. 619, 630-31 (1991), cited in *Nelson* states:

"Taking yet another approach *[to Gruenberg/Anderson],* the Supreme Court of Pennsylvania explicitly denied the existence of the tort of first-party 'bad faith' in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company.* In so doing, the *D'Ambrosio* court rejected the *Gruenberg* decision and the tort created by its holding." Vol. 29 at 629. (footnotes omitted)

Thus, the *Gruenberg* decision was clearly rejected by the *D'Ambrosio* court which refused to create the new tort of first-party "bad faith." The "tort vs. contract" question was not before the Supreme Court of Pennsylvania, and the court did not, as *Nelson* infers, hold that if an action for insurer bad faith did exist, that action would have to be a tort.

Included in the *Nelson* court's "history of 'bad faith'" is a discussion of the legislation that followed the 1981 *D'Ambrosio* opinion. *Nelson* suggests, through the repeated use of the word "invitation," that the Supreme Court in *D'Ambrosio* wanted the Pennsylvania Legislature to create a statutory cause of action for bad faith conduct in the handling of insurance polices. The

legislature did enact such a statute in 1990 with the passage of section 8371. Indeed, federal courts and commentators have concluded that the passage of section 8371 was *in response to* the *D'Ambrosio* opinion. See slip op. at 11-12 and cases and comments cited therein. However, it does not follow that the legislature, in enacting the statute nearly 10 years later, intended to create a "new tort" as the California courts had done simply because *Gruenberg* was discussed in *D'Ambrosio*. The Pennsylvania Supreme Court cited the California decision in *Gruenberg* because Mr. D'Ambrosio argued that the Supreme Court should adopt the position of the Supreme Court of California in *Gruenberg*. Moreover, the Supreme Court stated its decision in *D'Ambrosio* in terms of "tort" law because the plaintiff had styled his claim as an action in tort.

Based upon this legislative and case law "history of 'bad faith,' " the *Nelson* court concluded:

"[W]e believe that the Pennsylvania Supreme Court in *D'Ambrosio* contemplated the creation of a tortious cause of action for bad faith, but explicitly left the creation of such an action to the discretion of the General Assembly. There is little doubt that §8371 owes its existence to *D'Ambrosio's* invitation." Slip op. at 12.

We do not believe that the legal treatises cited by *Nelson* support the contention that the *D'Ambrosio* court "contemplated the creation of a tortious cause of action for bad faith," and that its opinion served as an "invitation" to the legislature to enact such a statutory cause of action.

Christopher Hasson in his comment, *The 1990 Pennsylvania Auto Insurance Law: An Analysis of "Bad Faith" and the "Limited Tort Option," supra* writes:

"The *D'Ambrosio* court . . . [held] there was no need to construct a first-party 'bad faith' tort. The court

stated that such an action was unnecessary because the 'legislature has already made dramatic, sweeping efforts to curb the bad faith conduct.' " 29 Duq.L.Rev. at 630. (footnote omitted)

These "dramatic, sweeping efforts" are contained in the Unfair Insurance Practices Act ("UIPA"). Joseph Decker in his article, *Insurer Liability Under Pennsylvania's Bad Faith Statute,* 65 Pa.B.Ass'n.Q. no. 2 (April 1994), states:

"Although the *[D'Ambrosio]* court acknowledged the seriousness of bad faith conduct by insurers, it held that the provisions in the Pennsylvania Unfair Insurance Practices Act were sufficient to curb such conduct. The court stated: *'There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action.'* The court stated that the Pennsylvania Legislature should 'determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.' " *Id.* at 47-48. (emphasis added)

The Supreme Court in *D'Ambrosio* clearly did not believe that the creation of a new tort was necessary to supplement the UIPA. Therefore, there was no "invitation" to the legislature.

The second reason given by the *Nelson* court is that recognition of the "new tort" is justified on the basis of "the nature of a bad faith cause of action." The *Nelson* court states unequivocally that section 8371 is not exclusively contract based because the award of punitive damages is one of section 8371's primary remedies. Slip op. at 4. It is well settled in Pennsylvania that punitive damages are not recoverable in an action

for breach of contract.[4] See *AM/PM Franchise Assoc. v. Atlantic Richfield*, 526 Pa. 110, 126, 584 A.2d 915, 927 (1990); *Thorsen v. Iron and Glass Bank*, 328 Pa. Super. 135, 143, 476 A.2d 928, 932 (1984). *Nelson* posits that the possibility of punitive damages for bad faith takes the cause of action out of the concept of a contract claim.

However, the recent decision of the Third Circuit Court of Appeals in *Polselli v. Nationwide*, 126 F.3d 524 (3rd Cir. 1997), highlights the "contractual" characteristics of a bad faith claim:

"[W]e conclude that since an insurer's duty of good faith toward an insured is implicit in every insurance policy, an action to enforce that duty must necessarily 'arise under' that policy. There is no common law private remedy for bad faith conduct, but the Pennsylvania Supreme Court has long recognized that an insurer must act with the 'utmost' good faith toward its insured. In *Romano v. Nationwide Mutual Fire Insurance Co.*, [435 Pa. Super. 545,] 646 A.2d 1228 (1994), the court concluded that an insurer's duty of good faith exists because of the special relationship between an insurer and its insured and the very nature of the insurance contract. *The insurer's duty of good faith, therefore, is contractual* and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement." *Polselli*, 126 F.3d at 530. (emphasis added) See also, *Gray v. Nationwide Mutual Insurance Co.*, 422 Pa. 500, 223 A.2d 8 (1966).

---

4. There are, however, several states that have adopted a bad faith cause of action as contractual and have allowed a broader range of damages which may include punitives. See for example, *Pickett v. Lloyd's*, 621 A.2d 445, 452 (N.J. 1993), and *Fleming v. Allstate Insurance Co.*, 106 A.D.2d 426, 482 N.Y.S.2d 519 (1984).

*Nelson* does acknowledge that "an action under §8371 is factually linked to the underlying contractual duty of good faith and fair dealing upon which the insured can sue the insurer for breach of contract, . . . ." Slip op. at 13. Rather than recognizing that the bad faith claim contains elements of both tort and contract, *Nelson* insists on defining the cause of action as exclusively one or the other. The *Nelson* court concluded that "[b]ad faith is more akin to the former than to the latter." Slip op. at 15. The *Nelson* opinion goes on to say:

"To determine whether a claim of bad faith has merit, one must look at the behavior of the insurer toward the insured and measure its reasonableness. See *Klinger v. State Farm Mutual Automobile Insurance Co.,* 115 F.3d 230, 233 (3d Cir. 1997). . . . Such an inquiry into the reasonableness of the insurer's *behavior,* to see whether it is perhaps more than mere negligence or bad judgment, . . . bears the classic earmarks of the law of torts." Slip op. at 13-14 (citing W. Page Keeton et al., *Prosser and Keeton on Torts* Section 1, at 6 (5th ed. 1984)). *Nelson* concludes:

"[T]orts concerns itself with standards of conduct that society imposes. Contracts concerns itself with promises the parties themselves make and exchange. Bad faith is more akin to the former than to the latter because it is precisely such an exogenous standard." Slip op. at 15.

In its analysis of the nature of a bad faith cause of action, *Nelson* engages in a gratuitous "balancing" of the tort and contract characteristics of a bad faith action, which is not authorized by section 5527.

The question presented is not whether a bad faith action looks more like a tort action than a contract action. The question is whether a bad faith action "is subject to another limitation [other than section 5527]."

Section 5527 provides in pertinent part:

"Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." 42 Pa.C.S. §5527.

Nothing in the bad faith statutory language "subjects" the bad faith claim to a specific statute of limitations. The cause of action itself has elements of contract and of tort. Thus, as Judge Brody observed in *Woody,* "no explicit statute of limitations applies to a statute that can sound in many different causes of action each governed by a different limitations period." 965 F. Supp. at 695. Where no specific statute of limitations applies, section 5527 controls. Therefore, such an action must be subject to the "catchall" statute of limitations under section 5527.

The final reason given by *Nelson* in support of the "new tort" theory is "the approaches taken by the heavy majority of other state supreme courts." *Nelson* notes that "[a]t least 29 states which recognize a cause of action for bad faith have chosen to characterize the cause of action as a tort," citing Douglas R. Richmond, *The Two-Way Street of Insurance Good Faith: Under Construction, But Not Yet Open,* 28 Loy.U.Chi.L.J. 95, 107 n.74 (1996). In fact, Mr. Richmond identifies 24 state supreme courts and 5 lower courts which have "apparently recognized the bad faith breach of a first-party insurance contract as a common-law tort." *Id.* *Nelson* relies upon this "lopsided balance of state authority" for predicting that the Pennsylvania Supreme Court would also find that an action for bad faith under section 8371 is a tort. Slip op. at 17. Perhaps equally significant is the fact that 22 jurisdictions have either *not* found a cause of action for bad faith to sound exclusively

in tort, have refused to recognize first-party bad faith in the first instance, or have not addressed the issue. Perhaps that is why the *Woody* court did not address the issue of how bad faith actions are characterized in other jurisdictions, an "omission" soundly criticized in *Nelson.*

As noted by Mr. Richmond, "Courts have reluctantly embraced first-party bad faith as an independent tort." Douglas R. Richmond, *The Two-Way Street of Insurance Good Faith: Under Construction, But Not Yet Open, supra,* 28 Loy.U.Chi.L.J. at 107. Several state supreme courts have held that a cause of action for bad faith sounds exclusively in contract. See for example, *Tackett v. State Farm Fire & Casualty Insurance Co.,* 653 A.2d 254, 264 (Del. 1995) (first-party bad faith is breach of contract); *Pickett v. Lloyd's, supra* (first-party bad faith cause of action sounds exclusively in contract);[5] *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 798-800 (Utah 1985) (bad faith in the first-party context is a contract claim, albeit with expanded consequential damages); *Fleming v. Allstate Insurance Co., supra* (same). See also, *A & E Supply Co. Inc. v. Nationwide Mutual Fire Insurance Co.,* 798 F.2d 669 (4th Cir. 1986), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987) (Virginia law does not recognize the tort).

Other supreme courts have adopted a hybrid contract/tort theory. In *Dailey v. Integon General Insurance Co.,* 331 S.E.2d 148 (N.C. 1985), for example, the North Carolina Supreme Court has created a tort for

5. It is interesting to note than in *DiSalvatore v. Aetna Casualty & Surety Co.,* 624 F. Supp. 541 (D.N.J. 1986), a federal court predicted that the highest court in the state of New Jersey would conclude that a bad faith action sounds in tort. In fact, as acknowledged by *Nelson,* the Supreme Court of New Jersey has held just the opposite in *Pickett v. Lloyd's, supra.* Slip op. at 15.

first-party bad faith situations but has limited its effect so as not to mirror the *Gruenberg* and *Anderson* tort. The tort claim, which had to accompany a contract claim, only allowed punitive damages, while the contract action provided compensatory damages.

Moreover, there are several states that have refused to recognize first-party bad faith altogether.[6] See for example, *Yuen v. American Republic Insurance Co.,* 786 F. Supp. 531, 533 (D.Md. 1992) (no first-party bad faith in Maryland); *Taylor v. Blue Cross/Blue Shield of Michigan,* 517 N.W.2d 864, 871 (Mich.Ct.App. 1995) (refusing to recognize first-party bad faith); and *Washington v. Government Employees Insurance Co.,* 769 F. Supp. 383, 386-87 (D.D.C. 1991) (District of Columbia does not recognize bad faith in either third-party or first-party context); *Marquis v. Farm Family Mutual Insurance Co.,* 628 A.2d 644, 652 (Me. 1993) (Maine does not recognize either third-party or first-party bad faith, instead allowing expanded general and consequential damages for an insurer's breach of its contractual obligations).

Finally, there are some states, such as Pennsylvania, that have no common-law bad faith, but rather have a statutorily created cause of action. See for example, *Mohr v. Dix Mutual County Fire Insurance Co.,* 143 Ill.App.3d 989, 97 Ill.Dec. 831, 493 N.E.2d 638 (1986); *Duncan v. Andrew County Mutual Insurance Co.,* 665 S.W.2d 13 (Mo.App. 1983); *Leonard v. Firemen's Insurance Co. of Newark, N.J.,* 100 Ga.App. 434, 111 S.E.2d 773 (1959).

---

6. Mr. Decker states in his article, *Insurer Liability Under Pennsylvania's Bad Faith Statute, supra:* "Numerous states, including Pennsylvania, rejected the idea of first-party bad faith, using various rationales to support their disagreement with the California Supreme Court's holding in *Gruenberg.*" 65 Pa.B.Ass'n.Q. at 47.

For these reasons, the discussion in *Nelson* does not convince me that an action under section 8371 sounds exclusively in tort and, thus, would be subject to a two-year statute of limitations under section 5524(7).

The *Nelson* court is critical of Judge Brody's analysis in *Woody* because the decision is based mainly upon the Black's Law Dictionary definition of "bad faith" which had been adopted by earlier decisions of the Third Circuit Court of Appeals and the Pennsylvania Superior Court. See *Polselli v. Nationwide Insurance Co.*, 23 F.3d 747, 751 (3d Cir. 1994); *Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa. Super. 545, 646 A.2d 1228 (1994). In the absence of any statutory guidance within section 8371 itself, the courts have relied upon the "peculiar and universally acknowledged meaning" that the term "bad faith" has acquired in the insurance context:

" 'Bad faith' on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Woody v. State Farm*, 695 F. Supp. at 693, citing *Polselli*, 23 F.3d at 751 (citing Black's Law Dictionary at 139 (6th ed. 1990)).

It appears from this definition and from Judge Brody's analysis that a bad faith claim can sound in either tort or contract. The fact that bad faith can be the result of fraudulent conduct would suggest a tort analysis. The fact that the definition of "bad faith" refers to the duty of good faith and fair dealing incorporates contractual concepts. Judge Brody concludes that the

term "bad faith," as interpreted under existing Pennsylvania law, encompasses actions by insureds that sound in both tort and contract. I agree with this analysis. Because the bad faith statute is sui generis,[7] it is neither tort nor contract but embodies elements of each. That is, one bad faith claim may involve fraudulent conduct and be very similar to a tort action. Another may involve the violation of the duty of good faith and fair dealing and sound in contract. Therefore, the "catchall" statute of limitations should apply.

*Woody* relies upon the Pennsylvania Superior Court decision in *Gabriel v. O'Hara,* 368 Pa. Super. 383, 534 A.2d 488 (1987), where the court considered the applicable statute of limitations for actions brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1 et seq. In *Gabriel,* the court noted that there was no specific statute of limitations provided under the UTPCPL, which it described as a sui generis statute. The *Gabriel* court further noted that because UTPCPL claims can involve fraudulent conduct as well as breach of contract, two different statute of limitations periods could apply, depending on the nature of the conduct alleged. The *Gabriel* court noted the need for consistency in cases brought under the UTPCPL and held that the six-year ("catchall") limitation period under 42 Pa.C.S. §5527(6) governed actions under the UTPCPL. 368 Pa. Super. at 395, 534 A.2d at 494.

A similar problem exists with suits under section 8371. While some could involve allegations of tortious or fraudulent conduct and others could involve allegations of breach of contract, conceivably different statutes of limitations could apply. A need for consistency

---

7. Meaning, in plain words, "unique."

in bad faith suits is as compelling as the need for consistency under the UTPCPL. This court, therefore, agrees with Judge Brody in *Woody* that, because the Pennsylvania Legislature has provided no explicit limitations period for bad faith claims brought under 42 Pa.C.S. §8371, these claims should be subject to the six-year catchall limitations period.

Furthermore, the Pennsylvania Supreme Court recognized the sui generis nature of a claim for bad faith in *D'Ambrosio* by holding that there was no common-law remedy for insurer bad faith. If, as the *Nelson* court held, the bad faith conduct of an insurer toward its insured was analogous to a common-law tort, then the Supreme Court would have held that the plaintiff could bring an action in tort against the insurer. Indeed, if insurer bad faith is not sui generis, there would be no need for a statute because an insured would be able to sue the insurer under a common-law cause of action.

Like the court in *Woody,* the Eastern District Court predicted in *Cincinnati Insurance* that the Pennsylvania Supreme Court would conclude that an action under section 8371 is so steeped in both contract and tort law that the six-year statute of limitations should apply. In reaching its conclusion, the court in *Cincinnati Insurance* relied heavily upon *Woody's* logic, as well as the recent decision of the Third Circuit Court of Appeals in *Klinger v. State Farm Mutual Automobile Insurance Co.,* 115 F.3d 230 (3rd Cir. 1997). In *Klinger,* the Third Circuit stated:

"The obvious design of [section 8371] is, first, to place [the insureds] in the same economic position they would have been in had the insurer performed as it promised, by awarding attorney's fees as additional damages; and second, to punish [the insurer] for giving

primacy to its own self-interest over that of the [insureds] by awarding punitive damages." *Id.* at 236.

Thus, *Cincinnati Insurance* concluded that section 8371 is "primarily compensatory" in nature and, therefore, found that the "catchall" provision of section 5527 was "the most closely analogous limitations provision." C.A. no. 97-1223 at n.1.

We agree with the analysis set forth in *Woody* and *Cincinnati Insurance* and conclude that the six-year statute of limitations set forth in section 5527 applies to a bad faith action under section 8371.

Even if the *Nelson* court is correct in its prediction that the Pennsylvania Supreme Court would define a cause of action pursuant to section 8371 as one sounding solely in tort and, therefore, subject to a two-year statute of limitations under section 5524(7), plaintiff's claims are not time-barred. Plaintiff filed a motion to amend his complaint to add a bad faith claim in December 1993. Defendants requested an extension of time to respond to the motion and entered into settlement negotiations with plaintiff. The motion to amend was eventually resolved by the court on December 6, 1996, and plaintiff was granted leave to amend his complaint to add a bad faith claim. In response, defendants raised the defense of the statute of limitations.

When a defendant's conduct is continuing in nature, the statute of limitations is tolled while that conduct continues. *Dellape v. Murray,* 651 A.2d 638, 640 (Pa. Commw. 1994). Under plaintiff's no-fault insurance policy with defendant, defendant had a continuing obligation to pay plaintiff's medical bills related to the accident as those bills were received. Every time a bill was submitted by plaintiff, he was making a claim. Every time payment was refused by defendant, it acted in bad faith. Plaintiff continued to submit his medical

bills to defendant until June 1996. Defendant continued to deny payment of those bills until June 1996 and has refused to pay interest on overdue bills to the present date. Thus, the statute of limitations on plaintiff's bad faith claim did not begin to run until at least June 1996, which was within two years of the commencement of this bad faith action, that is, December 1996.

Because the bad faith conduct which forms the basis for plaintiff's claim is an ongoing phenomenon rather than a discreet act, and is alleged to have entered into the limitations period, we find the complaint pleads a continuing bad faith sufficient to toll the statute. Any bad faith conduct alleged to have occurred before December 1994 is not time-barred, in the event that our appellate courts find that the two-year statute applies.

Accordingly, we enter the following:

ORDER

And now, April 27, 1998, upon consideration of defendants' motion for judgment on the pleadings, the briefs filed by the parties, and oral argument of counsel, it is hereby ordered that said motion is denied.