ANDERSON, and wife, Plaintiffs-Appellants, v. CON-
TINENTAL INSURANCE COMPANY, and others, Defend-
ants-Respondents.

Supreme Court

*No. 76–242. Argued October 2, 1978.—Decided October 31, 1978.*
(Also reported in 271 N.W.2d 368.)

678

For the appellants there were briefs by *Robert Arthur Melin* of *Schroeder, Gedlen, Riester & Moerke,* with oral argument by *Mr. Melin,* all of Milwaukee.

For the respondents there was a brief by *Joseph D. McDevitt* and *Borgelt, Powell, Peterson & Frauen, S. C.,* and oral argument by *Mr. McDevitt,* all of Milwaukee.

HEFFERNAN, J.  We conclude that, upon the pleading of appropriate facts, an insured may assert a cause of action in tort against an insurer for the bad faith refusal to honor a claim of the insured.

The appeal is from an order of the circuit court, which dismissed the plaintiffs' complaint on defendants' motion grounded on the assertion that, in Wisconsin, no cause of action arises on behalf of a named insured, even where, under the pleadings, it is conceded that the insurer acted in bad faith in its refusal to honor the claim of the insured.  The plaintiffs are Jacob R. Anderson and his wife, owners of a home in the City of Milwaukee.  Effective October 1, 1973, they obtained a home owner's insurance policy from the Continental Insurance Company, which, among other things, provided coverage for loss occasioned by fire, lightning, explosion, or smoke.  While the policy was in effect, the plaintiffs, Anderson and wife, returned to their home on November 30, 1975, to discover that the walls, carpeting, furniture, draperies, and clothing in the house were covered with an oil and smoke residue, which allegedly was the result of a fire or an explosion in the furnace.  On the following day, Continental Insurance Company was given notice of the damage.

It is alleged by the plaintiffs that the Underwriters Adjusting Company was delegated by Continental Insurance Company to handle the claim on behalf of Continental. Underwriters called in cleaners, who attempted to renovate and clean the premises and its contents. It nevertheless was necessary, according to the complaint, for the plaintiffs to repaint, clean, and restore the premises, and to replace carpets which shrank due to excessive cleaning ordered by Underwriters Adjusting Company. A pecuniary loss of $4,611.77 was alleged by the plaintiffs.

The Andersons attempted to negotiate with Underwriters as the agent for Continental Insurance Company, but all said negotiations were "to no avail."

It is alleged that Continental Insurance Company, Underwriters Adjusting Company, and Underwriters' manager in the area, Bernard A. Anderson, refused to negotiate in good faith concerning the amount of payment, and that each of them has submitted offers in settlement which were completely unrealistic and which had no relation to the damage incurred by the plaintiffs.

The plaintiff homeowners further recite that, when it became apparent that negotiations were not forthcoming or were to no avail, they retained an attorney to represent them in their claim against the insurance company. The complaint recites that counsel immediately filed a sworn proof of loss, which set forth in detail the inventory, the cost and the value, and the amount claimed in respect to the damages sustained. The proof of loss was filed within the time limit prescribed by the policy. On January 16, 1976, the proof of loss was transmitted to Underwriters Adjusting Company at Wauwatosa to the attention of B. A. Anderson. On January 23, 1976, the proof of loss was returned to plaintiffs' counsel by Underwriters' agent, B. A. Anderson, on behalf of Continental and Underwriters Adjusting

Company. On January 28, 1976, the proof of loss was sent to Continental's home office in New York City. On February 3, 1976, plaintiffs' counsel was informed by Continental that the proof of loss had been referred to a Continental Vice President in charge of the Western Department of Continental. On February 19, 1976, plaintiffs' counsel made inquiry in respect to the disposition of the proof of loss; and on March 3, 1976, Roger S. Olson, Senior Vice President of Continental, informed plaintiffs' counsel that the matter had been turned over to Underwriters Adjusting Company and that B. A. Anderson, to whom counsel had sent the proof of loss on January 16, was authorized to handle any claims under the policy. After these peregrinations of the document, Continental again returned the proof of loss to plaintiffs' counsel.

The plaintiffs have alleged that the consistent refusal of Continental Insurance Company, Underwriters Adjusting Company, and B. A. Anderson to accept the sworn proof of loss and the refusal to negotiate in good faith were done with the knowledge and design of avoiding the obligations under the insurance contract. It is alleged that the conduct of each of the defendants was wilful, fraudulent, intentional, and in bad faith and for the purpose of discouraging, avoiding, or reducing the payment due under the terms of the policy. It is further alleged that each of the defendants acted maliciously and oppressively, with the design and intent to harass the plaintiffs maliciously and in an outrageous manner. Compensatory damages in the sum of $15,000 and punitive damages in the sum of $100,000 are demanded.

A second cause of action was alleged for the simple breach of the contract. For that breach, the plaintiffs demand payment in the amount of $4,611.77, the sum set forth in the proof of loss, together with interest, costs, and attorney's fees. Apparently no objection was

made to the second cause of action, and the motion to dismiss for failure to state a claim upon which relief could be granted was directed solely to Count 1, the count which alleges bad faith.

The motion to dismiss the first cause of action is based upon sec. 802.06(2)(f), Stats.: ". . . failure to state a claim upon which relief can be granted." The motion to dismiss, like a demurrer, admits the facts that are pleaded, but only for the purpose of testing whether a claim was stated and whether relief could be granted upon those facts if such facts are proved. Neither a demurrer nor a motion to dismiss admits facts for purposes of trial. The plaintiff is still put to his proof.

The relationship of the motion to dismiss for failure to state a claim to the prior rule in respect to demurrers is set forth in Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976):

"The motion to dismiss for failure to state a claim upon which relief can be granted serves basically the same function as the demurrer for failure to state ultimate facts constituting a cause of action under former section 263.06(6), that is, to test the legal sufficiency of the complaint. Unlike section 263.03(2), however, the new rules do not require that the complaint state all the 'ultimate facts constituting each cause of action.' Thus, the motion to dismiss usually will be granted only when it is quite clear that under no conditions can the plaintiff recover."

As the comment by Clausen and Lowe makes clear, the new rules of civil procedure provide for notice pleading, and the resolution of the precise facts which sustain the claim is left to discovery. Clausen and Lowe, *supra* at 38.

Although under the prior demurrer provision, complaints were to be construed liberally in favor of stating a cause of action, under the new rules complaints are to be construed even more liberally. A complaint which might well have failed under the old procedure for failure to state sufficient facts now will be sustained if reasonable notice is given to the defendant in respect to the nature of the claim.

The plaintiffs' complaint gives adequate notice of the circumstances of the claim and the nature of the claim asserted. From a pleading viewpoint, the complaint is sufficient. It alleges a tort by an insurer, because it is alleged the insurer and the other defendants acted in bad faith intentionally and maliciously for the purpose of harassing the plaintiffs to discourage them from asserting their rightful claim and to prevent them from collecting the amounts due under the insurance policy. This claim was entirely separate and apart from the claim for the breach of the insurance contract, which is not questioned at this stage of the proceedings.

The plaintiffs have therefore stated a claim upon which relief could be granted in some jurisdictions of the United States. It is conceded by the defendants that, under the tort rules adopted by the Supreme Court of California, particularly in *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973), a cause of action or a claim for relief would be stated. It is asserted by the defendants on this appeal that such cause of action does not exist, however, in Wisconsin.

Although such a cause of action has never been explicitly recognized in this state, implicit recognition to such a claim for relief was given in the case of *Drake v. Milwaukee Mutual Ins. Co.*, 70 Wis.2d 977, 236 N.W.2d 204 (1975). Therein, the named insured sought recovery

under the uninsured motorist provisions of an automobile policy. The court in *Drake,* at 983, stated:

"Drake also seeks recovery for what amounts to a tortious breach of contract. In addition to the failure to pay benefits under the policy, she claims that the company is also liable for what she characterizes, in the alternative, as a bad faith refusal to honor her claim, or as an intentional infliction of emotional distress."

Had the court reached the conclusion that, under no set of pleadings, a claim for what it called a tortious breach of contract could be asserted against an insurer, it would not have proceeded to determine whether the facts were sufficient to state that cause of action, but it did just that. The claim of tortious breach of contract was thrown out, not because such a claim could not be asserted under Wisconsin law against an insurer, but because the facts pleaded were insufficient.

While, in the context of *Drake,* the court's statement was undoubtedly dicta, because the question addressed was the sufficiency of the facts, the logic of the opinion leads inevitably to the conclusion that the court did not question that a cause of action for bad faith could be asserted under Wisconsin law. Moreover, it was apparent to the court that the denial of Drake's claim by the insurance company was the consequence of a dispute over an arguable interpretation of Wisconsin law. Accordingly, leave to plead over was denied.

The assumption of the court which shines through the *Drake* opinion is that, in a case where a claim was not fairly debatable, refusal to pay would be bad faith and, under appropriate facts, could give rise to an action for tortious refusal to honor the claim. Nevertheless, we recognize that this court has not explicitly held that such a claim may be asserted in an action brought by an insured against his own insurance company for

failure to exercise good faith in settling the insured's own claim. We explicitly do so in this case and hold that such a cause of action may be pleaded and, under appropriate facts, may be proved, and that damages may be afforded.

As in *Drake,* the plaintiffs here assert two separate causes of action. One is for the simple breach of contract—the failure to pay the claim in accordance with the policy. The other cause of action—the one with which we are concerned with here—sounds in tort although it arises out of a contractual relationship.

By virtue of the relationship between the parties created by the contract, a special duty arises, the breach of which duty is a tort and is unrelated to contract damages. This tort of bad faith or malicious and intentional harassment by one party to a contract directed toward the other party, who seeks to assert his contract claim, has been referred to as a "tortious breach of contract." *Drake, supra* at 983. While that term may be a convenient shorthand method of denominating the intentional conduct of a contracting party when it acts in bad faith to avoid its contract obligations, it is confusing and inappropriate, because it could lead one to believe that the wrong done is the breach of the contract. It obscures the fact that bad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract *per se* and it fails to emphasize the fact that separate damages may be recovered for the tort and for the contract breach.

When it is recognized that recovery is sought for the tort and not for the breach of contract, the cliches which are relied upon by the defendants—e.g., "Punitive damages are not allowed for a mere breach of contract" —become irrelevant. The question whether punitive damages are permissible thus is not to be disposed of on

grounds that what the plaintiffs assert is a breach-of-contract action, but rather must be considered under a discussion of whether the facts surrounding the tort of bad faith evidence such conduct that punitive or exemplary damages are permissible. This question will be discussed later in the opinion.

We emphasize at this juncture only that the tort of bad faith is not a tortious breach of contract. It is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract. This rationale had its origin in an opinion of this court. *Hilker v. Western Automobile Ins. Co.*, 204 Wis. 1, 231 N.W. 257, 235 N.W. 413 (1930, 1931).

The rationale of the California cases, of which *Gruenberg v. Aetna, supra,* is the leading representative, is traceable directly to this court's opinion in *Hilker.* See, Gilardy, *Good Faith and Fair Dealing in Insurance Contracts: Gruenberg v. Aetna Insurance Co.,* 25 Hastings L.J. 699, 702. In *Hilker,* the plaintiff asserted that the insurance company's bad faith conduct in failing to make an adequate investigation of an automobile accident, its failure to settle a case within the policy limits, and its indifference in respect to the insured's interests resulted in a judgment against the plaintiff in excess of his policy coverage. In a separate action brought against the insurer, Hilker sought recoupment of the coverage he was required to pay because of the defendant insurance company's conduct. The court acknowledged that the right asserted by Hilker against his insurance company could not be predicated upon any express provision of the contract. It said:

". . . the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim. However, all

courts are agreed that the insurer does owe to the insured some duty in this respect. This duty is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer." (at 13)

In *Hilker,* the duty on the insurance company was found to be analogous to that of a fiduciary. The court pointed out that, where a person purchases an insurance policy:

"[He barters] to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense." (at 14)

In addition, the *Hilker* court emphasized that it was the duty of an insurer to assess claims as a result of an appropriate and careful investigation and that its conclusions should be the result of the weighing of probabilities in a fair and honest way. The *Hilker* court emphasized that, for an insurance company's decision on a claim to be one made in good faith, it must be based upon a knowledge of the facts and circumstances upon which liability is predicated. The lack of reasonable diligence and the insurer's refusal to determine the nature and extent of the liability evidenced bad faith.

The rationale which recognizes an ancillary duty on an insurance company to exercise good faith in the settlement of third-party claims is equally applicable and of equal importance when the insured seeks payment of legitimate damages from his own insurance company. That such a duty arises out of the relationship between the contracting parties themselves cannot be doubted. As black letter law, Restatement, *Law of Contracts* 2d,

sec. 231 (Tentative Drafts Nos. 1–7, Rev. and Edited, 1973), provides: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." The *Hilker* situation as pertinent to this section of the Restatement is specifically recognized by the footnote to *Comment d,* page 525, which cites Keeton, *Ancillary Rights of the Insured against His Liability Insurer,* 13 Vanderbilt L. Rev. 837 (1960), and *Brassil v. Maryland Cas. Co.,* 210 N.Y. 235, 104 N.E. 622 (1914), a case relied upon in *Hilker.*

Where, as in *Hilker* or in the later case of *Alt v. American Family Mut. Ins. Co.,* 71 Wis.2d 340, 237 N.W.2d 706 (1976), the insurance company which is charged with settling a claim of a third party against its insured acts in bad faith, its breach of a "fiduciary duty" is rather clear. Yet a similar responsibility of fair dealing toward the named insured is equally required when a claim is that of the insured. As the California court in *Gruenberg, supra* at 575, stated:

"It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is imminent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort."

We conclude that the above statement is fully in accord with sec. 231, Restatement, *Law of Contracts* 2d (Tentative Drafts Nos. 1–7, Rev. and Edited, 1973), and we expressly adopt the *Gruenberg* statement as declaring the accepted law and applying the principle of law set forth by this court in *Hilker.*

The leading case which recognizes a cause of action in tort against an insurer for the breach of its duty of good faith in dealing with its insured is *Gruenberg, supra.* That case reached the California Supreme Court on appeal from an order dismissing the plaintiff's complaint following defendant's assertion on demurrer that such cause of action did not exist. In procedural aspects, therefore, *Gruenberg* is similar to the appeal before this court. Gruenberg lost his restaurant in a fire. He alleged that a claims adjuster for his insurer falsely told a state arson investigator that Gruenberg was over-insured. Felony arson charges were then filed against Gruenberg. Because the criminal charges were pending, Gruenberg, on the advice of his counsel, refused to make a statement to the insurer concerning the fire. Because of this refusal, the insurance company refused coverage and refused to accept a later offered statement of Gruenberg submitted after the arson charges were dismissed.

While the facts in *Gruenberg* are more aggravated than those alleged in the instant case, they are similar in that each evinces purposeful conduct by the insurance company designed to evade payment of the claim. *Gruenberg* is of special significance to the law of this jurisdiction, because its theory of a tort of bad faith is traceable to the Wisconsin case of *Hilker v. Western Automobile Ins. Co.* It was upon the rationale of *Hilker* that the California court concluded that insurers owe their own insureds a duty of good faith in the settlement of first-party claims. We accept the *Gruenberg* rationale to be applicable to first-party claims which may be asserted in Wisconsin against insurance companies.

Accepting as we do that an insured may state a claim for the tort of bad faith against its own insurer, the question remains: What elements or facts must be stated to assert a bad faith claim and did the Andersons allege such facts in their complaint.

While defendants do not question the sufficiency of the facts stated by the Andersons in their complaint, if indeed a bad faith claim is cognizable in Wisconsin, we think it appropriate to outline the nature of the allegations required to support such claim.

*Drake, supra,* provides some guidance for those who seek to plead the tort of bad faith in respect to an insurance contract. In *Drake,* under the facts alleged, this court concluded that an action for bad faith was not stated, because it was not a case "where the validity of the claim was not even fairly debatable." (at 984) It is thus apparent from *Drake* that when a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. In *Drake,* it was determined that "there was a genuine dispute over the status of the law at the time the denials were made, and it cannot be said that the company's denials were made in bad faith." (at 984)

The law which obliges the insurance company to pay proved and itemized fire and smoke damages to the Andersons is unquestioned. Under no view of the applicable law is that obligation "fairly debatable."

Whether a claim is "fairly debatable" also implicates the question whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded.

To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. "Bad faith" by definition cannot be unintentional. "Bad faith" is defined as

"Deceit; duplicity; insincerity." American Heritage Dictionary of the English Language (1969), p. 471. The same dictionary defines "deceit" as a "strategem; trick; wile" (p. 342), and duplicity as "Deliberate deceptiveness in behavior or speech." (P. 405)

*Hilker, supra,* at 15, emphasizes that bad faith is the absence of honest, intelligent action or consideration based upon a knowledge of the facts and circumstances upon which a decision in respect to liability is predicated. While *Hilker* emphasizes the duty of ordinary care and reasonable diligence on the part of an insurer in handling claims, it is apparent from *Hilker* that the knowing failure to exercise an honest and informed judgment constitutes the tort of bad faith.

The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, *i.e.,* would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances. *See, Hilker, supra,* and *Alt v. American Family Mut. Ins. Co.,* 71 Wis.2d 340, 237 N.W.2d 706 (1976).

It is appropriate, in applying the test, to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review. In the instant case, insofar as the complaint alleges, the insurer and the other defendants refused even to consider the nature and extent of the plaintiffs' damages, and specifically rejected and spurned the opportunity to evaluate and consider the submitted proof of loss. The pleading of the plaintiffs was sufficient in this respect.

While we have stated above that, for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard of a reasonable basis for a denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

Under these tests of the torts of bad faith, an insurance company, however, may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.

We are satisfied that the application of the test formulated above, which recognizes the intentional nature of the tort of bad faith and puts the test upon an objective basis, will minimize the fears expressed by the defendant insurance company that to permit claims for bad faith will result in extortionate lawsuits. Such result cannot follow when an insurance company in the exercise of ordinary care makes an investigation of the facts and law and concludes on a reasonable basis that the claim is at least debatable.

Thornton and Blaut, in *Bad Faith and Insurers: Compensatory and Punitive Damages,* 12 Forum 699, 719 (1977), stated:

"One problem with the California approach is that while insurers who act outrageously toward legitimate claimants should be punished, the possibility of scaring insurers into paying questionable claims because of the threat of a bad faith suit and its excessive damages is undesirable. This will cause payments of claims which

should not be paid and accompanying higher insurance rates which must be borne by all of the policyholders. An insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required to pay the claimant."

Insurers in Wisconsin need not be mulcted by extortionate or questionable claims if they adhere to the standards of care which we have set forth above.

It is apparent, however, that another aspect of the *in terrorem* nature of an action for bad faith arises because it is an intentional tort. Intentional torts may in some circumstances result in not only compensatory damages, but also punitive damages and damages for emotional injury.

In respect to a claim for emotional distress, we note that the plaintiffs herein alleged that each of the defendants acted "so as to maliciously and intentionally depress, distress and harass plaintiffs." Because the focus of all parties on this appeal was upon the question of the availability of the tort of bad faith, we do not determine whether damages for mental or emotional distress are allowable under the pleadings of this particular lawsuit. Some generalities in respect to damages for mental distress, we believe, are however appropriate.

In negligent torts, mental distress is compensable only when there is an accompanying or resulting physical injury. *Ver Hagen v. Gibbons,* 47 Wis.2d 220, 177 N.W.2d 83 (1970). In intentional torts, substantial other damages in addition to damages for emotional distress are required. *D.R.W. Corp. v. Cordes,* 65 Wis.2d 303, 222 N.W.2d 671 (1974). Where the tort is specifically that of the intentional infliction of emotional distress, no other damages need be alleged or proved. However, additional limitations are imposed on a cause of action

for the intentional infliction of emotional distress. A plaintiff must prove that the purpose of the conduct was to cause emotional distress, that the conduct was extreme and outrageous, that it was the cause in fact of the plaintiff's injury, and that the plaintiff suffered an extreme disabling emotional response. *McKissick v. Schroeder*, 70 Wis.2d 825, 832, 235 N.W.2d 686 (1975); *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312 (1963).

By contrast, where the intentional tort of bad faith is alleged, the defendant's conduct need not be extreme and outrageous. An intent to cause emotional distress need not be shown. There need only be a showing of the knowledge or reckless disregard of the lack of a reasonable basis for denying or refusing to honor or negotiate on an insured's claim. Nevertheless, there may be cases where, in an action for bad faith, a plaintiff can prove all of the elements necessary to show the intentional infliction of emotional distress and, in such circumstances, recovery for such damages could be had under the rationale of *McKissick* and *Alsteen*. *See, Eckenrode v. Life of America Ins. Co.*, 470 F.2d 1 (7th Cir. 1972).

In the absence of pleading and proof of the intentional infliction of emotional distress, however, the tort of bad faith falls within the second category described above, where substantial other damages in addition to the emotional distress are required if there is to be recovery for damages resulting from the infliction of emotional distress. In the bad faith cause of action against an insurance company, we therefore conclude that to recover for emotional distress in the absence of pleading and proof that there was an intentional infliction of emotional distress, the plaintiff must plead and prove

substantial damages aside and apart from the emotional distress itself and the damages occasioned by the simple breach of contract.

It should be noted that in *Gruenberg, supra,* and in *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 113 Cal. Rptr. 711, 521 P.2d 1103 (1974), damages for emotional distress was considered appropriate where, in addition to the alleged emotional distress the plaintiff sustained substantial damages in addition to those resulting from the breach of contract.

We conclude, however, consistent with Wisconsin law set forth in *McKissick* and *Alsteen, supra,* that in no circumstances may a plaintiff recover for emotional distress, even when there are other accompanying damages, unless the emotional distress is severe. A recovery for emotional distress caused by an insurer's bad faith refusal to pay an insured's claim should be allowed only when the distress is severe and substantial other damage is suffered apart from the loss of the contract benefits and the emotional distress.

In respect to punitive damages, which are specifically pleaded by the plaintiffs, we cannot conclude that, because sec. 636.10, Stats., provides for augmented interest if a claim is not promptly paid, punitive damages, if otherwise appropriate, should not be allowed. As stated above, the tort of bad faith is not for the breach of a contract. It is a separate tort. Sec. 636.10 is merely an additional provision of the insurance contract incorporated into it by operation of law. It is unrelated to the tort of bad faith. In the event of late payment, augmented interest would be due under the statute although no bad faith was attributable to the insurance company.

We do not conclude, however, that the proof of a bad faith cause of action necessarily makes punitive damages appropriate. Punitive damages are awarded to punish a wrongdoer and to serve as a deterrent. *Mid-Continent Refrigerator Co. v. Straka,* 47 Wis.2d 739, 746, 178 N.W.2d 28 (1970). We pointed out in *Mid-Continent* that punitive damages are to be awarded "only where the wrong was inflicted 'under circumstances of aggravation, insult or cruelty, with vindictiveness or malice.'" (at 747) We also stated therein that there is a distinction between the intent or malice necessary to maintain an action for intentional tort (such as bad faith) and the intent which must be shown to recover punitive damages. For punitive damages to be awarded in addition to compensatory damages for the tort, there must be a showing of an evil intent deserving of punishment or of something in the nature of special ill-will or wanton disregard of duty or gross or outrageous conduct. In the specific context of the intentional tort of bad faith, exemplary damages are not necessarily appropriate although the plaintiff be entitled to compensatory damages. For punitive damages to be awarded, a defendant must not only intentionally have breached his duty of good faith, but in addition must have been guilty of oppression, fraud, or malice in the special sense defined by *Mid-Continent v. Straka. See also, Silberg v. California Life Ins. Co., supra,* at 462.

*By the Court.*—Order reversed and cause remanded for trial.