In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 05-3127 & 05-3282

JOHN R. TALMAGE d/b/a TALMAGE AUTO CENTER,

*Plaintiff-Appellant / Cross-Appellee,*

*v.*

CHARLES B. HARRIS, CNA INSURANCE COMPANY, and
DOAR, DRILL & SKOW, S.C.,

*Defendants-Appellees / Cross-Appellants.*

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 03-C-658—**Barbara B. Crabb**, *Chief Judge.*

ARGUED SEPTEMBER 19, 2006—DECIDED MAY 3, 2007

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* On April 3, 1995, a fire swept through the premises of the auto repair business that John Talmage operated in New Richmond, Wisconsin. After he notified his insurance carrier of the loss, Talmage made extensive repairs to the business. The present case arose after the insurance company decided that it had paid enough, and the lawyer Talmage hired agreed to a settlement of his claims against the insurer. The lawyer, Charles B. Harris, did not handle matters to Talmage's satisfaction, however, which led Talmage ultimately to

file a legal malpractice action. The district court dismissed some claims and others went to trial before a jury, which ruled in Talmage's favor in part and awarded him modest damages. The district court reduced those damages further. On appeal, Talmage complains that the district court made a number of evidentiary errors and unduly restricted his damages. Harris cross-appealed from the district court's refusal to order judgment as a matter of law in his favor. We conclude that the district court's evidentiary rulings were within the scope of its discretion and that it did not err otherwise in its handling of the case, and we therefore affirm.

**I**

Talmage's business, the Talmage Auto Center, offered complete auto services and collision repair. At the time of the fire, it was insured by United Fire & Casualty Company ("United Fire"). The policy provided coverage for fire loss, with an aggregate limit of $489,000. The day after the fire, Talmage properly notified United Fire of the event. United Fire assigned an adjuster named John H. Holt to handle the file. Holt was new to the task: he had never adjusted a claim as large as Talmage's, nor had he previously worked with a fire claim involving an auto repair facility. Holt told Talmage to find a contractor to perform the necessary repair work, but neither Holt nor Talmage was able to find someone suitable. At that point, United Fire neither prepared its own estimate of the amount of the claim nor asked a contractor to prepare one. Talmage thought that the loss was approximately $527,700, including damage to the building, damage to business personal property, loss of income, employee tools, and other miscellaneous items. Talmage and Holt agreed that Talmage and his employees would perform the repair work themselves. Holt told Talmage to document

the time that they devoted to the work and to save the receipts for the materials they purchased; United Fire, Holt promised, would reimburse Talmage. Later, United Fire hired an accountant, Jennifer Bestul, to review and organize the records that Talmage had submitted; Bestul recommended that United Fire adjust the loss on a time-and-materials basis.

Although Talmage regularly submitted the time records and receipts that were accumulating, United Fire did not reimburse him in accordance with Holt's promises. Nevertheless, it did make significant partial payments: between April 17, 1995, and May 20, 1996, it paid him $309,309.66. Dissatisfied because he thought that more was due, Talmage turned to Holt's supervisor, Kelly Hart, but Hart was no help. Later, United Fire removed Holt from the job and replaced him with Stan Stensrud; by this time, Talmage had done enough repairs to enable him to reopen the business. Stensrud took a fresh look at the entire claim and decided, at a time when the repairs were 80% complete, to change the method of calculating the fire loss. Instead of a straight time-and-materials system, Stensrud decided to rely on an outside estimate.

In the meantime, on May 28, 1996, Talmage retained Doar, Drill & Skow, S.C., the law firm of attorney Charles Harris, to represent him in settling his claims against United Fire. On Talmage's behalf, Harris prepared a proof of claim statement for United Fire that itemized the losses, documented them, and presented a total claim of $527,701.95. With a large gap separating the parties' assessments of the amounts due, Talmage and United Fire agreed to submit to an appraisal proceeding in December 1996, as required by the policy. There were three appraisers—one selected by Talmage, one by United Fire, and a third selected by the first two.

The appraisal proceeding dragged on for quite some time, while the parties collected documents and deposed

witnesses. In April 1997, Harris filed a lawsuit against United Fire on Talmage's behalf in Wisconsin state court, asserting claims for breach of contract and bad faith. More than a year later, on July 20, 1998, the parties attended an appraisal hearing. Rather than proceeding to the merits, however, they decided to explore settlement. Ultimately, United Fire offered to settle all of Talmage's outstanding claims for an additional $114,000 over and above the $309,309 it had previously advanced. Harris recommended that Talmage accept this offer, even though it was lower than the $200,000 that Talmage believed he was owed. According to Talmage, Harris assured him that he could accept the $114,000 and still pursue his bad faith claim separately. Relying on that advice, Talmage took the $114,000, and the state court approved the settlement.

Afterward, Talmage believed that Harris and his law firm were pursuing the "reserved" bad faith claim. Between September 1998 and November 2000, he called Harris's office many times to inquire about the status of his case, but apparently no one gave him any information. Only on November 21, 2000, did Harris inform Talmage for the first time that the firm was not willing to handle this claim. In the meantime, the two-year statute of limitations in Wisconsin for the intentional tort of bad faith committed by an insurance company had expired. Harris did not mention this fact either in his letter to Talmage or otherwise. As a result of Harris's inaction, Talmage was unable to pursue his bad faith claim against United Fire. He filed this malpractice action on November 19, 2003, relying on the district court's diversity jurisdiction. (By that time, Talmage was a citizen of Montana; Harris was a Wisconsin citizen; the firm is a "service corporation" incorporated in Wisconsin with its principal place of business there; and CNA Insurance (the law firm's carrier) is incorporated in Delaware and has its principal place of business in Illinois.)

**II**

At various points before the trial, the district court narrowed the scope of Talmage's case. It ruled that Talmage had not pointed to enough evidence to proceed on his claims for (1) additional fire loss, (2) the expenses allegedly due to him from interest charges that he had paid on his credit cards while awaiting reimbursement from United Fire, and (3) punitive damages. In the final pre-trial order, the court rejected Talmage's objection to certain evidence relating to appraisals or valuation of the property, and it decided to grant the defendants' request that Talmage be precluded from claiming a net fire loss expense of $141,036 (the difference between his alleged proof of loss and the amount he accepted in settlement from United Fire). Chief Judge Crabb explained that the only way Talmage could prevail would be if he could have persuaded a jury to award him $513,000 (an amount $24,000 over the policy limit). She concluded that Talmage had no evidence to support either that or any other number, and he had no expert testimony indicating that Harris's advice to take the (net) $430,000 offered in the settlement was negligent legal representation.

The claim that Harris committed malpractice by failing to pursue the bad faith action against United Fire went to trial before a jury. As the district court pointed out, in order to prevail Talmage had to prove first that he had a winning claim against United Fire for bad faith denial of coverage, and second that Harris acted improperly in failing to pursue that claim. Talmage wanted to prove United Fire's bad faith through the testimony of Russell Bohach, a lawyer, who was prepared to testify about the standard of reasonableness for handling an insurance claim. The district court permitted that testimony, although it later regretted the decision, finding in a post-trial ruling that Bohach lacked sufficient knowledge of the insurance industry to qualify as an expert on those

matters. Nonetheless, the court also found that its error in permitting Bohach's testimony was harmless, because the jury was able to understand this case on its own. The crux of the case, as the court saw it, was whether United Fire reasonably believed that Talmage's invoices were unreliable, and if its decision to delay additional payments until it could resolve its concerns was also justified. The jury resolved the underlying dispute about United Fire as well as the malpractice claim in Talmage's favor— a decision that the district court refused to upset after the trial.

Defendants were more successful in their challenge to the amount of damages. The jury awarded $68,322.67 in damages, which represented both the legal fees Talmage paid to Harris ($32,632.00) and losses Talmage suffered because of a forced sale of his business ($35,690.67). The district court agreed with the defendants that the evidence was insufficient to establish a causal link between United Fire's delay in payments and any decline in the value of Talmage's business. (At the trial, the court had refused to allow Talmage to seek damages for interest he had paid on his credit cards for the same reason.) The court accordingly reduced the damages award to $32,632.00.

### III

Talmage raises a bevy of arguments on appeal, some of which relate to the pre-trial and trial rulings of the district court and others to its post-trial decisions. We address them, insofar as possible, in chronological order.

A. Exclusion of Talmage's claim for contract damages

Before the trial, the district court ruled in response to a motion *in limine* filed by Harris that Talmage would not

be permitted to pursue a claim for additional losses from the fire. Talmage was seeking an additional $141,036, over and above the interim payments and settlement payment he had received from United Fire. This was essentially a partial summary judgment, although it was not labeled as such. We review the district court's decision *de novo*. See *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000).

The district court found that Talmage had not pointed to evidence in the record that would support a finding that he would have collected any additional money at all, in light of the $114,000 settlement and the earlier payments. Before this court, he argues that his fire loss claim had two components: damages that he sought from United Fire at the time of the appraisal proceeding, and damages that were not included in the claim presented for appraisal (because they dealt with United Fire's alleged bad faith). Harris argues that Talmage's claim for additional damages is precluded as a matter of law. The settlement that was reached in conjunction with the appraisal proceeding had the effect of settling the state court action that Talmage had brought. He asserts that it is barred under the doctrine of claim preclusion, which under Wisconsin law makes a final judgment conclusive "in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *Lindas v. Cady*, 515 N.W.2d 458, 463 (Wis. 1994).

Claim preclusion, however, is not the proper doctrine for this situation. To begin with, we have a different claim—legal malpractice—between different parties. Although the "case within a case" for Talmage's legal malpractice claim is his action against United Fire, there is no way that he could have litigated his present claim against Harris and the law firm in that earlier case. Issue preclusion is another possibility, but under Wisconsin law that

cannot apply unless "the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and . . . the determination was essential to the judgment." *In re Estate Rille ex rel. Rille,*728 N.W.2d 693, 702 (Wis. 2007); see also Restatement (2d) of Judgments § 27 (1982). Normally, when a case is resolved by settlement or stipulation, courts will find that the "valid final judgment" requirement of issue preclusion has not been satisfied. *E.g.*, *Deminsky v. Arlington Plastics Machinery*, 657 N.W.2d 411, 428 (Wis. 2003); see 18A Charles A. Wright and Arthur R. Miller*, Fed. Prac. & Proc. 2d § 4443. *Cf. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 600 (2001) (prevailing party status for attorneys' fees purposes not achieved by voluntary change in defendant's conduct; must have judgment on the merits or court-ordered consent decree).

Nonetheless, the fact remains that Talmage entered into a contractual settlement with United Fire that stipulates the amount he was willing to accept for the fire losses. Had he not settled, he would have had to convince the trier of fact in the state court action to award him more than $200,000 in additional damages (thereby taking his total recovery up to approximately $513,000). The district court properly concluded that Talmage could not satisfy this burden of proof without expert testimony. As Chief Judge Crabb pointed out, a fire-damaged commercial building presents a complex valuation problem: which part of the rebuilding or replacement was necessitated by the fire; is the new structure a simple replacement or is it an improvement over the old; if it is a bit of both, how should the costs be allocated? Talmage's lawyer conceded that he did not have this kind of evidence. He argued that it was unnecessary, because United Fire had agreed (through the inexperienced Holt) to pay him on a time-and-materials basis. Talmage cannot mean this

literally, however: at a minimum he would have been limited to reasonable expenditures and time. Had he decided to replace a 2,000 square-foot business with a 20,000 square-foot mini-mall, he would have had to bear most of the additional expense. The record does not reveal how much of his work was required to restore the business to its pre-fire condition and how much represented improvements. Without that evidence, his claim that the settlement was inadequate has no support and was properly rejected by the district court.

## B. Exclusion of Talmage's interest damages

The critical question for this part of the case is causation. Talmage's theory was that United Fire's delays and under-payments required him to carry large balances on his credit cards, for which he paid a substantial amount of interest. The only evidence Talmage offered on this point was a report from his accounting expert, Kleinheiz. The report displayed and quantified the interest charges that he paid during the period after the shop was destroyed. It does not, however, segregate charges related to the reconstruction from other charges he may have incurred during that period. This evidence fell so far short of anything revealing a causal link between the interest paid and United Fire's alleged bad faith that the district court properly kept it from the jury. We see no need to discuss whether the primary failing was the lack of expert testimony or the lack of evidence, period.

## C. Admission of expert reports

In this instance, Talmage is complaining that the district court erred by admitting certain reports, rather than by excluding information. Harris wanted to introduce several appraisal reports at the trial without calling

their authors as witnesses. Talmage objected on hearsay grounds. See FED. R. EVID. 801. The reports contained estimates by appraisers of the amount of the loss caused by the fire. The district court decided that the reports could come in as evidence of United Fire's state of mind. See *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay."). Talmage argues that reports authored by others could not show what United Fire was thinking.

Here again, Talmage is missing the point. The key issue is not the state of mind of the appraisers, which might have required analysis under FED. R. EVID. 803(3), but the effect of the report on United Fire's state of mind. The truth or falsity of the reports is irrelevant to the latter question, and thus they did not fall within the definition of hearsay in Rule 801. One contested issue was United Fire's "knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Weiss v. United Fire and Cas. Co.*, 541 N.W.2d 753, 757 (Wis. 1995). This is a subjective test. *Id.*; see also *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978). Harris was entitled to introduce the expert appraisal reports to show that United Fire did not have the requisite state of mind. If it did not, then at the secondary level Harris would not have been negligent by failing to pursue the bad faith claim.

D.  Bohach's expert testimony

As we mentioned earlier, Talmage wanted to, and did, present Attorney Russell Bohach as an expert on the question of bad faith in the insurance industry. Bohach, as the district court recognized in its post-trial ruling, had extensive knowledge about the law of bad faith claims. The problem was that the court concluded, after the trial was

over, that it should not have qualified Bohach as an expert on United Fire's conduct because he lacked knowledge of the insurance industry and its customs and practices. It is more than a little odd that Talmage is complaining about this, because the jury did hear Bohach's testimony and it ruled in Talmage's favor on the legal malpractice claim (and hence on the underlying bad faith claim). No relief we could order on this point would help Talmage, and we thus reject it on that basis.

### E.  Punitive damages

The district court decided that there was no evidence in the record that would have supported a punitive damages award in the litigation against United Fire. We agree with that assessment. As the Wisconsin Supreme Court observed, "[p]roof of a bad faith claim does not necessarily make the award of punitive damages appropriate. The intent necessary to maintain an action for bad faith is distinct from what must be shown to recover punitive damages." *Trinity Evangelical Lutheran Church and School-Freistadt v. Tower Ins. Co.*, 661 N.W.2d 789, 797 (Wis. 2003) (internal citation omitted). In order to recover punitive damages, the plaintiff must show "(1) evil intent deserving of punishment or of something in the nature of special ill-will; or (2) wanton disregard of duty; or (3) gross or outrageous conduct." *Id.*

There is no evidence in this record that comes close to any of those criteria. To the contrary, even though it may have had some doubts about the case, United Fire repeatedly sent checks to Talmage, up to the point where it had paid him almost $310,000 without a fuss. Talmage acknowledges this, of course, but he suggests that the company deliberately waited until he had expended his own funds repairing his shop and then it changed the reimbursement formula. Nothing supports this hypoth-

esis; United Fire's actions are equally if not more consistent with the reason it offered, which was its growing concern about over-payment. There is also no support for a punitive damages award in the malpractice action. While the jury was entitled to conclude that Harris was negligent in failing to warn Talmage about the expiring statute of limitations on his bad faith claim, nothing in the record points to the kind of evil intent, "wanton" disregard, or outrageous conduct that would be necessary for punitive damages.

F.  Reduction of the jury award

The reason why the district court reduced Talmage's damages from $68,322.67 to $32,632 was not a general sense that the evidence did not support the larger amount. Thus, this was not a remittitur, offered as an alternative to a grant of a new trial. It was instead a ruling as a matter of law (implicitly under FED. R. CIV. P. 50(b)) that the jury never should have been permitted to consider the elements of damage represented by the larger amount. Our review is therefore *de novo*. See *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir. 1993).

The $35,959.67 that the district court lopped off represented the alleged decline in the value of Talmage's business caused by United Fire's delays in reimbursing him. In rejecting this after the trial, the district court analogized it to the interest costs claim that it had refused to permit at the trial. As the court put it, "[t]he evidence does not show when the insurer's delay in payments amounted to bad faith, so that the jury could determine what relationship the bad faith delay had to the decline in value of plaintiff's business, as distinguished from a decline attributable to delays that were reasonable." The problem, in other words, was not in the proof of how much value was lost; it was, once again, a failure to show

causation. We, too, can find nothing in the record that would have permitted the jury to draw the necessary lines, and we therefore find no reversible error in the court's decision to limit Talmage's damages to the fees he paid to Harris.

**IV**

Last, we consider the issue Harris has presented in his cross-appeal: whether the district court erred when it refused to grant his motion for judgment as a matter of law, which was based on Talmage's failure to support his bad-faith case with expert testimony. Under Wisconsin law, in order to establish a claim for a bad-faith denial of coverage or refusal to pay, an insured "must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Weiss*, 541 N.W.2d at 757 (quoting *Anderson*, 271 N.W.2d at 691). Expert testimony may be relevant to the first point, but the district court concluded that it was not essential.

Relying on *Weiss*, the court reasoned that "the acts and omissions in dispute in this case are not so esoteric that a lay jury could not decide them." The jury was able to assess whether, under all the circumstances, the insurer behaved reasonably when it refused to pay Talmage the full amount he was requesting for his expenses in rebuilding his business premises. Harris points to no inflexible rule of Wisconsin law demanding expert testimony in circumstances like these, and it is unclear whether such a law would bind a federal district court in any event. Whether the jury needs expert testimony for a particular claim is a question within the district court's discretion, and we see no abuse of that discretion here.

*  *  *

Finding no reversible error either in Talmage's appeal or Harris's cross-appeal, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*