SCHELLHAS, Judge (dissenting)
I respectfully dissent from the majority's conclusions that the district court properly applied Minn. Stat. § 604.18 (2018) and that appellant Western National Mutual Insurance Company had no reasonable basis for denying respondent Alison Peterson's claim for a lifetime of Botox injections to treat headaches after a minor car collision.
Minnesota Statutes section 604.18 establishes a remedy for an insured when its insurer denies a first-party claim, such as an underinsured-motorist (UIM) claim, without a reasonable basis. Wilbur v. State Farm Mut. Auto. Ins. Co. , 892 N.W.2d 521, 524 (Minn. 2017). To recover taxable costs, including attorney fees, under this statute, an insured must show:
(1) the absence of a reasonable basis for denying the benefits of the insurance policy; and
(2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.
Minn. Stat. § 604.18, subd. 2(a). An insured cannot satisfy this standard by simply showing that, ultimately, the insurer was wrong in its evaluation of entitlement to benefits. See id.
Here, under the first prong, the district court determined that Western National lacked a reasonable basis for denying the benefits of the insurance policy because it failed to properly investigate and evaluate Peterson's claim, and because it failed to give sufficient weight to the possibility that a jury would find for Peterson on her UIM claim. Under the second prong, the court determined that Western National recklessly disregarded the lack of a reasonable basis because it failed to properly evaluate Peterson's medical evidence and credibility, and failed to reevaluate Peterson's claim after an injured party in an unrelated collision prevailed on a claim that a lifetime of Botox injections was necessary to treat collision-related headaches. Under both prongs, the court focused on record support for a jury finding that Peterson's UIM claim was warranted, not whether Western National had a reasonable basis for denying the claim in the first instance.
On appeal from a bench trial, we give no deference to a district court's decision on a question of law. Porch v. Gen. Motors Acceptance Corp. , 642 N.W.2d 473, 477 (Minn. App. 2002), review denied (Minn. June 26, 2002). "When reviewing mixed questions of law and fact, we correct erroneous applications of law" and review ultimate conclusions under an abuse-of-discretion standard. Id. (quotation omitted). The interpretation of a statute presents a question *453 of law that appellate courts review de novo. Depositors Ins. Co. v. Dollansky , 919 N.W.2d 684, 687 (Minn. 2018). When we interpret statutes, our goal is to effectuate legislative intent. Wilbur , 892 N.W.2d at 523. Courts first look to see whether a statute's language, "on its face, is clear or ambiguous." Id. (quotation omitted). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." Id. (quotation omitted). If a statute is unambiguous, courts need not consider canons of statutory construction. Id. Nor is it necessary to consider legislative history to construe an unambiguous statute. Staab v. Diocese of St. Cloud , 853 N.W.2d 713, 718 (Minn. 2014).
Based on its unambiguous language, the standard under the first prong of section 604.18, subdivision 2, is not whether a jury could find entitlement to benefits, but whether an insurer had a reasonable basis for denying benefits under the policy. Put another way, the fact that a jury might be justified in finding coverage does not compel the conclusion that the insurer lacks a reasonable basis for denying coverage. Here, by focusing on evidence that supported a finding of entitlement to benefits in the UIM action, the district court misinterpreted and misapplied the statutory standard and conflated the questions of entitlement to benefits under the policy and entitlement to taxable costs under section 604.18. Because the court analyzed whether a reasonable basis existed to support an award of benefits, it failed to consider evidence, or make findings, about the information Western National relied on in its investigation, evaluation, and ultimate denial of Peterson's claim.
Western National's assessment was that Peterson was not entitled to UIM benefits because she was fully compensated by her below-limits $ 45,000 settlement with the at-fault driver and the $ 20,000 paid by Western National in no-fault medical benefits. At the court trial on Peterson's section 604.18 claim, Western National relied on the following evidence: (1) Peterson had been in previous car accidents, including one in 2003, which involved a rollover crash in which she struck her head, and had a history of headaches; (2) Peterson had been under the care of a chiropractor since 2000; (3) the low-speed, side-swipe collision in 2009 caused only $ 2,973 in damage to Peterson's vehicle, after which her car was drivable, and she did not visit a doctor until after work; (4) prior to litigation, Peterson's medical records did not tie the 2009 accident to a permanent injury or classify her headaches as migraines; and (5) in the opinion of the board-certified neurologist retained by Western National to evaluate the claim, Peterson's headaches were not caused by the collision and were likely psychosomatic in origin, and Botox injections were not appropriate for her type of headache.
Given the available information about the collision and Peterson's history, the record amply supports a determination that whether previous payments fully compensated Peterson, so that she was not entitled to UIM benefits, was at least fairly debatable. The district court nevertheless rejected Western National's evidence, concluding that Western National was obligated to accept Peterson's medical evidence. Because the court misinterpreted the statute, it applied the wrong evidence, and therefore abused its discretion in concluding that Peterson showed there was no reasonable basis to deny her claim.
Although the second prong need not be reached when the insured fails to satisfy the first prong, I note that the district court made a similar error in interpreting and applying the second prong of section 604.18. The court concluded that Western *454 National acted in reckless disregard of the lack of a reasonable basis to deny benefits because it only offered $ 50,000 to settle the UIM claim, which "bore no reasonable relationship to the amount of [Peterson's] claimed damages or her likelihood of success at trial." Again, the statute does not ask whether the jury properly found that Peterson was entitled to UIM benefits. Nor does it require, as the court apparently concluded, an insurer to assign "some probability of success" to a significant damages claim simply because the insured could be a credible or sympathetic witness.
Even more attenuated from the statutory standard is the district court's reliance on a jury's determination in unrelated litigation, over an unrelated collision, that Botox treatments were warranted. The court concluded that Western National acted in reckless disregard of Peterson's entitlement to UIM benefits when Western National determined that the facts underlying an unrelated personal-injury verdict were distinguishable. Absent is a finding that Western National ignored that jury verdict altogether.[1] The district court indicated that the unrelated personal-injury verdict could require the conclusion that Peterson's UIM claim was covered, and that Western National's denial of benefits therefore was reckless. As with the first prong, the court misinterpreted the legal standard, considered the wrong evidence, and therefore abused its discretion in concluding that Peterson showed the second prong of section 604.18 was satisfied.
While reliance on foreign or federal caselaw or legislative history to interpret section 604.18 is not necessary, consideration of those sources nevertheless supports reversal of the district court's decision. Liability under section 604.18 "does not arise where the insurer is simply wrong about the factual basis for its denial of the claim." Friedberg v. Chubb & Son, Inc. , 800 F. Supp. 2d 1020, 1027 (D. Minn. 2011) (interpreting Minn. Stat. § 604.18 ). Whether an insurer has acted reasonably under the first prong of section 604.18 is measured against what another reasonable insurer would have done under similar circumstances. Id. at 1025. An insurer "is not obligated to disregard the opinion of its own expert in favor of the insured's expert opinion." Bellville v. Farm Bureau Mut. Ins. Co. , 702 N.W.2d 468, 477 (Iowa 2005) (quotation omitted) (applying Iowa bad-faith common law).
When a claim is "fairly debatable," an insurer is entitled to debate it. Anderson v. Cont'l Ins. Co. , 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978) (quotation omitted) (applying Wisconsin bad-faith common law). A claim is fairly debatable if it can be disputed on "any logical basis," and the question "can generally be decided as a matter of law by the court." Bellville , 702 N.W.2d at 473. The pertinent question is whether an insurer has no reasonable basis for denying a claim. Id. at 475. A determination whether a particular claim is fairly debatable "implicates the question whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded." Anderson , 271 N.W.2d at 376. An imperfect investigation alone "is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." Reuter v. State Farm Mut. Auto. Ins. Co. , 469 N.W.2d 250, 254-55 (Iowa 1991).
Assuming that section 604.18 permits recovery when an insured shows the absence of a proper investigation, the particulars *455 of the collision giving rise to the claim must surely impact the scope of any investigation requirement. Here, the district court dismissed Western National's consideration of any information except Peterson's medical records and expert opinions. The court trivialized any reliance on the fact that this claim arose from a minor collision with minimal property damage, no obvious physical injury, and no claim for UIM benefits until nearly five years after the collision. But the record reflects that Western National reviewed the medical records provided by Peterson; it simply disagreed that those records required the conclusion that Peterson's medical expenses resulting from the 2009 collision exceeded the amounts she had already received.
The record reflects that two experienced Western National claims adjusters, an internal claims review board, a board-certified neurologist, and an experienced personal-injury lawyer all reviewed Peterson's claim, and all agreed that she had no right to UIM benefits under the policy. Although the district court was troubled by what it viewed as delays in claim processing, the UIM trial was held-and Western National paid its policy limits-just over two years after Peterson first demanded UIM benefits in July 2014.
Finally, to the extent that the majority's analysis of section 604.18 relies on post- Anderson Wisconsin caselaw, the legislative history of section 604.18 establishes that the legislature intended only to adopt the Anderson standard-which matches our statutory language-not to follow later Wisconsin caselaw. S. Floor Deb. on S.F. 2822 conference committee report (Apr. 14, 2008) (statement of Sen. Scheid). Any reliance on earlier statements of legislative intent is misplaced as not reflecting the final compromise between the house and senate.
In sum, I would conclude that the district court misinterpreted and misapplied section 604.18. Rather than evaluate whether Western National had a reasonable basis for denying Peterson's UIM claim, the court considered whether a reasonable basis existed to support the UIM claim and calculated Peterson's likelihood of success in a jury trial. Because the court misinterpreted and misapplied section 604.18, I would reverse its conclusion that Peterson is entitled to taxable costs, including attorney fees, under section 604.18.

Also absent is any acknowledgement that, because Western National's lawyer in this case represented the injured party in the other case, its lawyer would be well-positioned to evaluate the similarities and differences of the two cases.