# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-3014

———————

Michael Adam, Administrator of the    \*
Estate of Richard J. Kessel, on behalf    \*
of Briale Kessel,    \*

     \*

        Appellant,    \*

     \*   Appeal from the United States
   v.    \*   District Court for the
     \*   Southern District of Iowa.
Stonebridge Life Insurance Company,    \*

     \*

        Appellee.    \*

———————

Submitted: January 12, 2010
Filed: July 15, 2010

———————

Before SMITH, and COLLOTON, Circuit Judges, and KORNMANN,[1] District Judge.

———————

SMITH, Circuit Judge.

Michael Adam, administrator of the deceased Richard Kessel's estate, brought suit against Stonebridge Life Insurance Company ("Stonebridge") alleging breach of contract and bad faith after Stonebridge rescinded an insurance policy and denied Adam's claim for benefits. Stonebridge answered, asserting the affirmative defenses of equitable estoppel, lack of standing, waiver, and equitable rescission. The district

---

[1] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

court[2] granted Stonebridge's motion for summary judgment. On appeal, Adam argues that the district court erred in dismissing his claims. We affirm.

## I. *Background*

On November 17, 2003, Kessel applied for a $75,000 term life insurance policy issued by Stonebridge.[3] Kessel designated his daughter, Briale Kessel, as the beneficiary. Kessel wrote "Laborer—Part time Social Security" in the section titled "Occupation" on the application. The application also contained a number of specific questions. Question A on the application asked:

To the best of your knowledge and belief have you:

A. Sought or received treatment or medical advice or been hospitalized for cancer, stroke, diabetes, blood pressure, or for any disease of the heart, blood, liver, kidneys, digestive or respiratory system, or for any nervous, mental, neuromuscular, or connective tissue disorder during the past five (5) years?

Kessel answered "no" in response to Question A. Kessel's answer was false. Kessel had, in fact, "[s]ought or received treatment or medical advice" for a mental disorder within five years of the date of his application. A June 28, 1999 order from the Iowa District Court for Keokuk County stated that Kessel was "seriously mentally impaired and in need of treatment, but can continue in outpatient treatment." On August 16, 2001, Kessel reported to Carol Schmidt, a registered nurse with the Richland Family Clinic, that he had been diagnosed with bipolar disorder since 1982.

---

[2]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

[3]"Since this appeal is from a motion for summary judgment, we state the facts in the light most favorable to the nonmoving party." *Nelson v. Corr. Med. Serv.*, 583 F.3d 522, 525 (8th Cir. 2009).

Kessel told Schmidt that he had been receiving treatment from psychiatrist Dr. Teresa Rosales in Ottumwa, Iowa, for the past four or five years. Kessel's medical records indicate that he was treated at the psychiatry clinic of the University of Iowa Hospitals and Clinics between 2001 and 2003. Adam concedes that Kessel's answer of "no" to Question A was false.

If Kessel had accurately answered "yes" to this question, his application would have been denied. Stonebridge uses a simplified underwriting process to review applications for certificates of insurance. If the applicant answers "yes" to a health question such as Question A, the application is declined. If the applicant answers "no" to the health questions, the application is approved. If Stonebridge issues an applicant a policy and later learns from an applicant via a verification form that one of the questions should have been answered "yes," then Stonebridge rescinds the policy and refunds any premiums paid to Stonebridge.

Kessel's application was not reviewed by a human underwriter, but rather keyed into a computer. Because he answered all health questions "no," a Stonebridge clerk automatically issued a certificate of insurance. Stonebridge records show the company never inquired further into Kessel's health during his lifetime or inquired why Kessel, who was 45 years old at the time of the application, received Social Security benefits. Stonebridge issued Kessel a certificate of insurance, effective November 25, 2003. Kessel made three premium payments of $72.80, totaling $218.40. On March 6, 2004, Kessel was killed in an automobile collision, and his estate sought death benefits under the policy.

Regarding contestability of claims, the policy states:

> The company cannot contest the Certificate after it has been in force during the Insured's lifetime for two years from the Insured's Certificate Effective Date or the effective date of the Reinstatement, except for Accidental Death Benefits, if any, fraud, or for not paying premiums.

-3-

On March 29, 2004, Stonebridge provided Mike Kennedy, attorney for the estate of Richard Kessel, with a Contestable Life Claim Form because Kessel died within two years of the effective date of the policy. During a contestable review, a claims examiner reviews documentation and determines whether Stonebridge would have issued a policy had Stonebridge received truthful information. After receiving permission to access Kessel's medical records, a Stonebridge claims examiner asked Kennedy whether Kessel received Social Security disability payments. Additionally, the claims examiner wanted to know the condition for which Kessel received Social Security benefits and the names and addresses of his treating physicians for that condition.

Kelly Foster, senior underwriter, reviewed medical records obtained during the review process and determined that Stonebridge would not have issued the certificate of insurance because Kessel had sought treatment and medical advice from Schmidt, who had made an assessment on August 16, 2001, that Kessel had "bipolar disorder" and that this constituted a "mental disorder," which Kessel should have disclosed on his application. On June 29, 2005, Stonebridge sent a letter to Kennedy stating that Stonebridge was rescinding Kessel's insurance due to material omissions on his application regarding medical treatment. Stonebridge refunded the premiums Kessel paid for the policy.

Adam, the administrator for Kessel's estate, acknowledged the decision to rescind in a letter that Kennedy wrote to Charles Costa, Vice President of Claims at Stonebridge, on January 20, 2006, and requested a replacement premium refund check. On January 27, 2006, Stonebridge issued a second check in the amount of $218.40 as a refund of the premiums Kessel paid. The check was cashed. By January 25, 2008, Adam retained a new attorney who initiated the instant lawsuit against Stonebridge.

In relevant part, Adam's complaint alleged breach of contract and bad faith and sought punitive damages against Stonebridge. Stonebridge answered, asserting the affirmative defenses of equitable estoppel, lack of standing, waiver, and equitable rescission. The district court granted Stonebridge's motion for summary judgment on Adam's breach of contract claim. The court found that no genuine issues of material fact remained regarding any of the elements of equitable rescission. The court also found that Stonebridge lawfully rescinded the insurance contract based on the misrepresentation Kessel made on his application for life insurance. The district court also granted Stonebridge's motion for summary judgment on Adam's bad faith and punitive damages claims, finding that Stonebridge had an objectively reasonable basis for denying Adam's claim.

## II. *Discussion*

Adam argues that the district court erred in granting Stonebridge's motion for summary judgment on his breach of contract claim. First, he argues that Kessel's misrepresentation was not material and Stonebridge's reliance on Kessel's misrepresentation was unreasonable. Second, Adam argues that his bad-faith claim had merit because Stonebridge's denial of his claim for payment on Kessel's life insurance certificate was unreasonable. Finally, Adam argues that Stonebridge's actions in denying coverage were willful and wanton and thus warrant punitive damages.

We "review de novo the district court's grant of summary judgment, viewing all facts and reasonable inferences in the light most favorable to [Adam as] the nonmoving party." *Merriam v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 572 F.3d 579, 583 (8th Cir. 2009). "Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 546 (8th Cir. 2007) (internal quotations and citation omitted). "[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." *Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 817 (8th Cir. 2008) (internal quotations and citation omitted). "To survive summary judgment, a plaintiff must substantiate his allegations with enough probative evidence to support a finding in his favor." *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 642 (8th Cir. 2008).

A. *Breach of Contract*

Adam first argues that Kessel's misrepresentation in Question A of the application was not material and Stonebridge's reliance upon the answer in Question A was unreasonable. Stonebridge responds that the undisputed facts demonstrate that Kessel made material misrepresentations and omissions on the application, Stonebridge justifiably relied on those misrepresentations and omissions, and Stonebridge would not have issued the certificate of insurance if Kessel had truthfully answered the question on the application. These facts, Stonebridge contends, established its affirmative defense of equitable rescission as a matter of law. Stonebridge also argues that we should affirm summary judgment because it established the elements of its waiver defense as a matter of law.

> To establish a breach of contract claim in Iowa a plaintiff must prove
>
> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).

There is no dispute that a valid contract existed between Kessel and Stonebridge. Stonebridge alleges that it did not breach the contract; rather, it simply lawfully rescinded the contract. Stonebridge relies on the doctrine of equitable

rescission, which states that "in Iowa, fraudulent misrepresentations leading to the creation of a contract gives rise to a right of rescission." *Schmidt v. Fortis Ins. Co.*, 349 F. Supp. 2d 1171, 1191 (N.D. Iowa 2005) (internal quotations, alteration, citation omitted). "[T]he proof required for rescission based on misrepresentation under Iowa law is less demanding than the proof necessary for the tort of misrepresentation." *Hyler v. Garner*, 548 N.W.2d 864, 871 (Iowa 1996). Five elements must be proven to establish equitable rescission: "(1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance." *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 269 (Iowa 2002) (internal quotations and citation omitted).

Adam concedes that Kessel's answer to Question A was a false representation and made with an intent to induce. Adam argues that the answer was neither material nor justifiably relied upon by Stonebridge.

### 1. *Materiality*

Adam argues that Kessel's answer to Question A was not material because the insurance policy Kessel purchased did not contain underwriting exclusions for the applicant's preexisting health conditions. Adam maintains that Stonebridge considered preexisting conditions but was not permitted to do so under its own contract. Kessel notes that the contract between Kessel and Stonebridge contains no dedicated section addressing preexisting conditions. The contract does state, however, that "if you would have been ineligible for coverage had the correct information been shown on the enrollment form at the time coverage became effective, upon request, we will return all of the premium contributions paid." Also, the application requires an applicant to sign the following statement, "I understand that the issuing of my Certificate is based on all statements and answers below, and I affirm they are complete and true to the best of my knowledge and belief." The contract does not state that preexisting conditions will render an applicant ineligible, nor does it exclude consideration of preexisting conditions.

Adam's argument is contrary to the plain language of the contract and express Iowa law. Applicable Iowa case law states that

> "answers made in response to questions in the application [for life insurance] as to prior illness, consultation with physicians and applications for other insurance, where the applicant, as here, declares that they are true and offers them as an inducement to the issuance of the policy, are deemed material as a matter of law."

*Crandall v. Bankers Life Co.*, 62 N.W.2d 169, 174 (Iowa 1954) (quoting *Fountain & Herrington v. Mut. Life Ins. Co. of New York*, 55 F.2d 120, 123 (4th Cir. 1932); *see also Rubes*, 642 N.W.2d at 270 (finding that insured's representation that he had not received treatment for alcoholism or been convicted of driving while intoxicated was material because the insurance company would have denied the application if such information had been disclosed).

> A fact is material if it substantially affects the interest of the party alleged to have been defrauded. Thus, materiality has been found where a fact influences a person to enter into a transaction, where it deceives that person or induces that person to act, or *where the transaction would not have occurred without it*.

*Utica Mut. Ins. Co. v. Stockdale Agency*, 892 F. Supp. 1179, 1194 (N.D. Iowa 1995) (emphasis added) (internal citation omitted).

The parties agree that if Kessel truthfully answered Question A, Stonebridge would not have issued the policy. Kessel's application answer meets the Iowa test of materiality. Thus, we hold that regardless of whether the contract explicitly stated that preexisting conditions will be considered, as a matter of the plain language of the contract, law and logic, Kessel's answer to Question A was material.

## 2. *Justified Reliance*

Adam also argues that Stonebridge's reliance on Kessel's response to Question A was not justified because he indicated elsewhere on the application that he received Social Security benefits, and therefore Stonebridge had a duty to perform a reasonable investigation into Kessel's health before relying upon his answer to Question A and approving his application. Stonebridge responds that its reliance on Kessel's answer to Question A was justified because the simplified underwriting process is a method commonly used by insurance companies in determining whether to provide coverage and that they had no reason to question the veracity of Kessel's representations on the application.

We hold that Stonebridge justifiably relied upon Kessel's assertion that he had not been treated for a mental health issue within five years of his application for life insurance. Iowa law supports this holding. In *Schmidt*, the court stated that an insurance company justifiably relied upon an insured's statement that she was not being treated for breast cancer, a fact she stated on an application form that indicated that the insurance company would rely upon her answers. 349 F. Supp. 2d at 1192 at n.19 (N.D. Iowa 2005). The Stonebridge application form advised Kessel that the company would rely upon his answers in issuing coverage, and Kessel agreed that insurance would be issued based upon "all statements and answers below" which he asserted were true.

Additionally, in *Rubes*, the court found that an insurance company justifiably relied on an applicant's responses because the application "sought straightforward answers to known past information" and did not require the applicant to "speculate about the general state of his health." 642 N.W.2d at 271. Here, Question A asked Kessel to indicate whether he had sought or received treatments, medical advice, or hospitalizations for specific conditions in the past five years. The question was straightforward and required no speculation.

Adam argues that Stonebridge should have inquired further into Kessel's claim that he received Social Security benefits as a 45-year-old man. Here, we agree with the district court that Kessel's inclusion of the words "Social Security" in the space provided for him does not mitigate the fact that he did not truthfully answer Question A.

Stonebridge did not have a duty to determine if Kessel was lying in Question A. "The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." Restatement (Second) of Torts § 540 (1977). Section 541 does state that "[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." However, Kessel did not inform Stonebridge that he had been treated for bipolar disorder. Kessel also did not inform Stonebridge that he was the recipient of Social Security Disability benefits. In response to the "Occupation" question, Kessel responded, "Laborer—Part Time" and "Social Security," with no mention of benefits. The misrepresentation—in this case the answer "no" to Question A—was not so obvious as to impel investigation. One can receive Social Security benefits without having received medical care in the five preceding years, which was the subject of Question A. Therefore, because it was not obvious that Kessel was lying on Question A, there was no reason to investigate further.

The plain language of the policy, the evidence presented below, and the Iowa law of equitable rescission all support Stonebrige's argument that it justifiably relied upon Kessel's answer to Question A. Because the representation was also material, we find that the grant of the summary judgment motion was proper.

### B. *Bad Faith*

Adam next argues that the district court erred in granting Stonebridge's motion for summary judgment on his bad faith claim because Stonebridge's denial was

unreasonable. Adam contends that Stonebridge possessed enough information to put it on notice that it needed to investigate Kessel's health further before approving his application for coverage. Adam asserts that his reference to Social Security in his occupation answer by itself sufficiently advised Stonebridge that Adam could not have truthfully represented that he had not received medical treatment in the preceding five years.

Stonebridge, on the other hand, asserts that it had an objectively reasonable basis to deny Kessel's claim for benefits because Kessel did not truthfully answer Question A, and if Kessel had truthfully answered Question A, Stonebridge would not have issued Kessel a certificate of insurance.

Iowa law recognizes a common-law bad faith claim against an insurer for an insurer's bad faith refusal for payment of benefits. *Merriam v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 580 F. Supp. 2d 838, 867 (S.D. Iowa 2008), *aff'd in part and rev'd in part and remanded*, 572 F.3d 579 (8th Cir. 2009) (granting defendant's motion for summary judgment on plaintiff's bad faith claim, which we affirmed). To prevail on such a claim, the plaintiff must prove by substantial evidence: (1) that the insurer had no reasonable basis for denying benefits under the policy and (2) that the insurer knew, or had reason to know, that its denial was without basis. *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007). The first prong is objective and the second prong is subjective. *Merriam*, 580 F. Supp. 2d at 867 (citing *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005)).

"A reasonable basis for denying insurance benefits exists if the claim is fairly debatable as to either a matter of fact or law." *Rodda*, 734 N.W.2d at 483 (internal quotations and citation omitted). The "fairly debatable" inquiry is an objective one. *Id*. "A claim is fairly debatable when it is open to dispute on any logical basis." *Id*. (internal quotations and citation omitted). "The focus is on the existence of a debatable issue, not on which party was correct." *Reid v. Pekin Ins. Co.*, 436 F. Supp. 2d. 1002,

1011 (N.D. Iowa 2006) (internal quotations and citation omitted). "A court does not weigh the conflicting evidence that was before the insurer; it decides whether evidence existed to justify denial of the claim." *Id.* (internal quotations, alteration and citation omitted).

A court can generally determine as a matter of law whether a claim is "fairly debatable." *Id*. That is because "[w]here an objectively reasonable basis for denial of claim actually exists, the insurer cannot be held liable for bad faith as a matter of law." *Gardner v. Hartford Ins. Accident & Indem. Co.*, 659 N.W.2d 198, 206 (Iowa 2003) (internal quotations and citation omitted). "An insurance company has the right to debate claims that are 'fairly debatable' without being subject to a bad faith tort claim." *Sampson v. Am. Standard Ins. Co.*, 582 N.W.2d 146, 150 (Iowa 1998).

Stonebridge had a reasonable basis for denying insurance benefits. A material misrepresentation on the insurance application is a reasonable basis for denial. Whether Adam had a valid claim for Kessel's life insurance proceeds was "fairly debatable." In fact, the debate is not particularly close. As discussed *supra*, it is undisputed that Kessel misrepresented his treatment history on the application. It is also undisputed that had he been truthful, he would not have received coverage."Where an insurer has an objectively reasonable basis to deny coverage, it has no duty to investigate further before denying the claim." *Merriam*, 580 F. Supp. 2d at 870. Further, reasonable minds could hold that denial based on this misrepresentation was proper. *See Bellville*, 702 N.W.2d at 474 (finding that an insurer is innocent of bad faith as a matter of law if the insurer took a position in regard to the claim "that reasonable minds could hold").

Because we hold that Stonebridge had a reasonable basis to deny Adam's claim there is no need to consider whether Stonebridge knew, or had reason to know, that its denial was without basis. For the same reason, we also need not consider whether

Adam waived any right to pursue a claim against Stonebridge. Finally, because Adam cannot prevail, we need not consider his arguments on punitive damages.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____